IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GARRETT TRAYLOR, *individually, and on behalf of others similarly situated,*<br><br>　　　　　　　　　　*Plaintiff*,<br>　　v.<br><br>LIVEFREE EMERGENCY RESPONSE, INC.,<br><br>AND<br><br>Q SYNERGY, LLC,<br><br>　　　　　　　　　　Defendants. | Case No.: 1:24-cv-10329-IT<br><br>CLASS ACTION |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO LIVEFREE EMERGENCY RESPONSE, INC.'S RULE 12(b)(2) MOTION TO DISMISS**

AND NOW, Plaintiff Garrett Traylor ("Plaintiff" or "Traylor") files his response in opposition to Defendant LiveFree Emergency Response, Inc. ("LiveFree")'s motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). Doc. Nos. 30-32.

**I.   INTRODUCTION AND SUMMARY OF ARGUMENT**

Defendant LiveFree, by and through its agent (or "dealer"), co-Defendant Q Synergy LLC, placed over twenty telemarketing calls to the landline phone and cell phone of Massachusetts-resident Garrett Traylor on Traylor's "617" and "781" area code phone numbers. The phone numbers that appeared on Traylor's caller ID associated with these telemarketing calls originated from Massachusetts area codes. In connection with one of these telemarketing calls, LiveFree itself charged Traylor's credit card and the charge was made against his Massachusetts-based bank account. LiveFree collected money from its "dealer" in connection with the sale of the LiveFree

1

product to Traylor. LiveFree then shipped the "LifeBeacon" product to Traylor's Massachusetts address with LiveFree's return address on the shipping label.

Despite LiveFree's clear connection with the telemarketing activities underlying this action, LiveFree contends that it is not subject to personal jurisdiction in Massachusetts. *See generally,* Doc. No. 32. However, through the actions of LiveFree's agent on its behalf, as well as LiveFree's own affirmative and purposeful actions, it has knowingly and purposefully availed itself to the Commonwealth of Massachusetts. For those reasons, which are set forth at length below, this Court has personal jurisdiction over LiveFree, and LiveFree's motion to dismiss should accordingly be denied. In the alternative, if the Court finds Traylor has not made a *prima face* showing of personal jurisdiction over LiveFree, Traylor requests the Court hold the motion to dismiss in abeyance to allow the Parties to complete jurisdictional discovery to be followed by supplemental briefing.

## II. FACTUAL BACKGROUND

### A. LiveFree places telemarketing calls to sell its products and services directly and through its "dealer" agents.

LiveFree's business is selling mobile medical alert systems that can be used to provide an alert when someone has fallen. Doc. No. 26, ¶¶ 13-14; Decl. of Traylor ¶¶ 16-17, 21-23; Plaintiff's Exhibit E. The brand name for one of LiveFree's products is "LifeBeacon." Doc. No. 26, at ¶ 14; Decl. of Traylor ¶¶ 16, 17, 23. LiveFree's website is www.LifeBeacon.com. Doc. No. 26, at ¶ 15; Decl. of Traylor ¶¶ 16, 17. LiveFree's principal place of business is located at 3411 Hawthorne Road in Pocatello, Idaho. Doc. No. 26, at ¶ 11; Decl. of Traylor ¶¶ 24.

LiveFree markets its products and services through telemarketing. Doc. No. 26, at ¶ 23; Decl. of Traylor ¶¶ 13. For example, LiveFree listed a "telemarketing" job in Pocatello, Idaho.

Doc. No. 26, at ¶ 24. The duties of this job included, "direct telephone contact to discuss our services, help customer to select the appropriate products and services, collecting billing information and delivery" and "making a good impression when calling leads." *Id*, at ¶ 26.

As the "lifeline" of LiveFree's company, LiveFree uses "dealers" to market LiveFree's products and services through telemarketing. *Id*, at ¶¶ 17, 23. LiveFree's website states that LiveFree has "a dealer network that extends throughout the United States." *Id*, at ¶ 16. The website states that "dealers" are "the lifeline of what we do, and help us deliver products that save lives." *Id*, at ¶ 17. LiveFree provides "24/7 access to [its] dealer portal, 24/7 monitoring, and a team dedicated to helping [dealers] reach [their] full potential." *Id*, at ¶ 19. To help its "dealers" reach their full potential, LiveFree provides its "dealers" the "utilization of all tools" and "collaboration from team members." *Id*, at ¶ 20. LiveFree also provides its "dealers" with services such as "fulfillment, returns, customer service, billing/collections, merchant services, monitoring, cellular serve, leasing and purchasing equipment and, portal access." *Id*, at ¶ 21.

One of LiveFree's "dealers" who placed telemarketing calls was Q Synergy, LLC. *Id.* at ¶¶ 2, 23, 29-34, 49-109. Unlike LiveFree, Q Synergy does not have an office location in Pocatello, Idaho, but is in Florida. *Id.* ¶¶ 27-28.

**B. LiveFree has the right to control the marketing of its "dealer" agents.**

LiveFree controlled the marketing tactics its "dealer" agent Q Synergy used to market LiveFree's products and services, including the names that could be used when marketing LiveFree's products and services. *Id.* at ¶ 30. LiveFree acknowledges this as its "dealers receive a limited-use license to market and sell LifeBeacon devices using its trademark" and "dealers" are told what they can and cannot say to prospective customers. Doc. No. 32-1, ¶ 11.

**C. LiveFree financially benefits from its "dealer" agents' telemarketing practices.**

LiveFree financially benefits from its "dealers" selling LiveFree's products and services. First, when "dealers" like Q Synergy sell a LiveFree product or service, the "dealer" pays credit card processing fees to LiveFree for the persons who used a credit card to make the purchase, including Massachusetts residents. Doc. No. 26, ¶ 31; *see also* Doc. No. 32-1, ¶ 10 ("all funds derived from the sale of devices . . . are remitted directly to the Dealer, minus a small payment processing fee . . . ."); Decl. of Traylor ¶¶ 21; Plaintiff's Exhibit E. When a "dealer" sells a LiveFree product, the return address is listed as LiveFree's business address in Pocatello, Idaho. Doc. No. 26, ¶ 32; Doc. No. 32-1, ¶ 8 ("The services LiveFree offers to Dealers include such things as order fulfillment [and] product support . . . ."); Decl. of Traylor ¶¶ 23; Plaintiff's Exhibits F, G. Second, when a "dealer" sells LiveFree's monitoring services, the "dealer" pays LiveFree a portion of the monitoring services to LiveFree. Doc. No. 26, ¶ 33; Doc. No. 32-1, ¶ 10 ("all funds derived from the sale of . . . monitoring are remitted directly to the Dealer, minus a small payment processing fee . . . ."). Third, LiveFree's "dealers" pay LiveFree a certain amount for each LiveFree product. Doc. No. 26, ¶ 34; Doc. No. 32-1, ¶ 8. In other words, the more LiveFree products a "dealer" sells, the more LiveFree profits as its "dealers" will purchase more LiveFree products. Doc. No. 26, ¶ 34.

> **D. LiveFree's "dealer" agent placed over twenty telemarketing calls to Massachusetts resident Traylor, to his Massachusetts phone numbers, using Massachusetts area codes.**

LiveFree also purposefully directs its aggressive telemarketing practices to Massachusetts residents. *See id.* at ¶¶ 36-37; Decl. of Traylor ¶¶ 10-16; Plaintiff's Exhibits C, D. One such resident was Plaintiff Garrett Traylor. Doc. No. 26. at ¶¶ 3, 6, 8, 9, 37-40, 42-109; *See generally* Decl. of Traylor.

### III. ARGUMENT

#### A. Applicable Standard for a Motion to Dismiss for Lack of Personal Jurisdiction under Fed. R. Civ. P. 12(b)(2).

When considering a Rule 12(b)(2) motion without holding an evidentiary hearing, the "prima facie standard" applies. *See generally Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998).[1] While it is plaintiff's burden to establish jurisdiction, the Court accepts "specific facts alleged by plaintiff as true (whether or not disputed) and construe[s] them in the light most congenial to the plaintiff's jurisdictional claim." *Id.* The Court then considers facts set forth by the defendant, to the extent such facts are uncontradicted. *Id.* The exercise of specific personal jurisdiction "must comport with the Massachusetts long-arm statute and constitutional due process requirements." *iNebular, Inc. v. Deutsche Bank Trust Co. Ams.*, 651 F. Supp.3d 413, 419 (D. Mass. 2023).

#### B. The Massachusetts long-arm statute and constitutional due process allow this Court to exercise specific personal jurisdiction over LiveFree.

When considering whether the Court has specific personal jurisdiction over a party, it should first analyze jurisdiction under the Massachusetts long-arm statute and then consider the constitutional right of fair play and substantial justice in exercising jurisdiction over the defendant. *See SCVNGR, Inc. v. Punchh, Inc.*, 85 N.E.3d 50, 52 (Mass. 2017). The Massachusetts long-arm statute establishes that this court has specific personal jurisdiction over LiveFree.[2] The long-arm statute provides:

---

[1] While there are other approaches the Court may use to determine the existence of personal jurisdiction, the prima facie approach is "the most conventional of these methods." *Daynard v. Ness, Motlet, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50-51 (1st Cir. 2002).

[2] LiveFree appears to concede specific personal jurisdiction exists under the long-arm statute as it does not address or mention the statute in its motion. *See* Doc. No. 32 *passim*.

5

> A Court may exercise personal jurisdiction over a person, **who acts directly or by an agent**, as to a cause of action in law or equity arising from the person's
>
> (a) transacting any business in this commonwealth;
> (b) contracting to supply services or things in this commonwealth;
> (c) causing tortious injury by an act or omission by an act or omission in this commonwealth; . . .

MASS. GEN. LAWS CH. 223A, § 3 (1993) (emphasis added).

In the First Circuit, there exists a three-part test for a court exercising specific personal jurisdiction is:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the *Gestalt* factors, be reasonable.

*Daynard v. Ness, Motlet, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 60 (1st Cir. 2002).

Traylor is the owner of a landline telephone bearing a Massachusetts 781-area code and a cell phone bearing a Massachusetts 617-area code. Doc. No. 26, at ¶¶ 42, 44; Decl. of Traylor ¶¶ 5-7. Traylor registered both numbers on the National Do-Not-Call Registry for the purpose of being inundated with unwanted telemarketing calls. Doc. No. 26, at ¶¶ 43, 45; Decl. of Traylor ¶¶ 5-7. Most of the LiveFree telemarketing calls Traylor received appeared on his phone as having originated from "617" and "781" area codes. *See* Doc. No. 26, at ¶¶ 38, 49, 62, 69, 76, 83, 88, 90, 95; Decl. of Traylor ¶¶ 11, 12; Plaintiff's Exhibits C, D. LiveFree also directly solicited its products to a Massachusetts resident, charged a Massachusetts resident's bank account for the sale of its product and shipped that product to Massachusetts. *See* Decl. of Traylor ¶¶ 16-23. Accordingy, LiveFree transacted business in the Commonwealth of Massachusetts, sought to provide services in Massachusetts and caused the tortious injury in Massachusetts. Decl. of Traylor ¶¶ 25-26. Accordingly, LiveFree is subject to personal jurisdiction under Massachusetts long-arm statute.

6

Further, this case arises out of LiveFree (directly, and through its agent)'s activities in Massachusetts, LiveFree's conduct represents the purposeful availment to Massachusetts and the exercise of jurisdiction would be reasonable. Accordingly, Traylor satisfies the First Circuit's requirements for specific personal jurisdiction.

In the TCPA context, specific personal jurisdiction exists in when the recipient of the improper phone calls receives phone calls in forum state and such calls are placed to an area code associated with the forum state. *See McDermet v. Porch.com*, 2019 WL 1619867, at *5 (D. Mass. Apr. 16, 2019) (Steans, J.) (that [Defendant] or its agents called [Plaintiff's] mobile and home phone numbers that have a Massachusetts area code (978), [is] an allegation sufficient to establish that [Defendants] purposefully availed themselves of the privilege of doing business in the Commonwealth); *Jones v. Revenue Assistance Program*, 2016 WL 3919843, at *1, 4-6 (D. Mass. July 14, 2016) (finding specific personal jurisdiction over Defendant for placing intentional repeated, unsolicited, commercial calls to a number registered to Plaintiff as a Massachusetts resident, despite Plaintiff's protestations). In other words, in TCPA cases, "personal jurisdiction is proper in the District in which the unlawful communication is received." *Mey v. Castle Law Grp., PC*, 416 F. Supp.3d 580, 586 (N.D. W. Va. 2019) (TCPA case); *see also Slominski v. Globe Life Inc.*, 2024 WL 556978, at *3 (E.D.N.C. Feb. 12, 2024) (same holding in a TCPA case); *Abramson v. Caribbean Cruise Line, Inc.*, 2014 WL 2938626, at *9 (W.D. Pa. June 30, 2014) (same); *Luna v. Shac, LLC*, 2014 WL 3421514, at *3 (N.D. Cal. July 14, 2014) (same).

Here, Plaintiff received over 20 calls to his Massachusetts area code phones. *See* Decl. of Traylor ¶¶ 3-5; *See* Exs. C and D. That fact alone establishes personal jurisdiction over this TCPA case and the parties involved in making those calls.

    **C. Because Q-Synergy placed unlawful calls to Traylor in Massachusetts on LiveFree's behalf, LiveFree is subject to personal jurisdiction in Massachusetts.**

When enacting the TCPA, Congress explicitly recognized vicarious liability in the plain language of the statute for violations of the do-not-call rules under 227(c). *See* 47 U.S.C. § 227(c)(5). The statute reads in relevant part that a "person who has received more than one telephone call within any 12-month period by **or on behalf of the same entity** in violation of the regulations prescribed under this subsection…" may assert a private right of action under the do-not-call rules of 227(c). In 2013, the FCC clarified that regardless of whether it is section 227(c) or 227(b) at issue,[3] a person or business cannot contract their way out of liability by outsourcing marketing activities to third-parties who violate the TCPA when acting for the benefit of that business. *In re DISH Network, LLC*, 28 FCC Rcd. 6574 (F.C.C. May 9, 2013). One could read the FCC's seemingly prescient language and arrive at the conclusion it was drafted specifically for the facts of this case:

> allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case… As the FTC noted, because '[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re Dish Network*, 28 FCC Rcd. at 6588 (emphasis added). The U.S. Supreme Court subsequently held it had "no cause to question" that FCC Order. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (US 2016). A "party who engages a third-party telemarketer may be held vicariously liable under federal common law agency principles for a TCPA violation." *Rosenberg v. LoanDepot.com LLC,* 435 F. Supp. 3d 308, 325 (D. Mass. 2020).

---

[3] Traylor asserts claims under both provisions. *See* Doc. No. 26, Counts I and II.

Without having the benefit of discovery, a TCPA complaint simply alleging unlawful calls were made, and the callers were selling a defendant's products, can be sufficient to overcome that defendant's motion to dismiss. *Bennett v. Sunpath, Ltd.*, No. 21-11519-GAO, 2023 U.S. Dist. LEXIS 47236, at *1 (D. Mass. Mar. 21, 2023) (O'Toole, J.) (where complaint alleged caller was selling defendant's warranties, it "can be inferred" defendant was involved in the unlawful telemarketing by its agents). Here, even at the very outset of discovery, Traylor goes well beyond alleging the calls were selling LiveFree products. Rather, Traylor presents substantial evidence that the calls he received were placed on LiveFree's behalf, including the following:

- On May 8, 2020, LiveFree's "dealer" QSynergy called Traylor on his 617 area code phone number, and transferred the call to a LiveFree employee "Tina" who directed Traylor to LiveFree's website. Decl. of Traylor ¶ 16;
- LiveFree charged Traylor's Massachusetts-based bank account for "Wireless Medical Alert" in a transaction which arose out of a call to his 781 area code phone number; Decl. of Traylor ¶ 21; Ex. E (screenshot of Wireless Medical Alert charge);
- LiveFree shipped a wireless medical device to Traylor in Massachusetts from Idaho in a transaction arising out of a call to Traylor's 781 area code phone number. Decl. of Traylor ¶¶ 23-24; Exs. F and G;
- Each of the calls Traylor received on his 617 phone and his 781 phone appeared to originate from a 617 or 781 phone number respectively; and
- Each of the calls Traylor received played a message identical to that which played at the beginning of the calls where he spoke with "Tina" from LiveFree in May of 2020 and from which he ordered the device in March of 2022. Accordingly, a strong inference exists that LiveFree is connected to each of the calls at issue.

Because Traylor demonstrates the calls by LiveFree's agent QSynergy were on its behalf, LiveFree is substantially connected to the conduct giving rise to his claim.

As it relates to specific personal jurisdiction due to calls placed by a defendant's alleged agent in the TCPA context, *McDermet v. Porch.com*, 2019 WL 1619867 (D. Mass. Apr. 16, 2019) (Stearns, J.) is directly on point. The plaintiff in *McDermet* brought a TCPA claim against an out-of-state defendant. *McDermet*, 2019 WL 1619867, at *1-2. The plaintiff was a Massachusetts resident who received unsolicited phone calls on his home and cell phones, both of which had Massachusetts area codes. *Id.* the plaintiff alleged that defendant or its agents placed multiple unsolicited calls to his phones, despite his phone numbers being registered on the National Do-Not-Call Registry. *Id.* The defendant then moved to dismiss the case for lack of personal jurisdiction because it was an out-of-state defendant and because it believed plaintiff failed to connect defendant's alleged conduct in Massachusetts to plaintiff's claims. *Id.* at *2. The *McDermet* court rejected defendant's argument, holding:

> [Defendant's] argument overlooks the generous reading of the Complaint that the prima facie standard requires. First, [plaintiff] directly alleges that [defendant] or its agents acting on its behalf called him on many occasions. These calls form the basis of [defendant's] alleged violations of the Do Not Call prohibitions. Second, the Complaint alleges that [defendant] or its agents called [plaintiff's] mobile and home phone numbers that have a Massachusetts area code (978), an allegation sufficient to establish that they purposefully availed themselves of the privilege of doing business in the Commonwealth… Third, the Gestalt factors support the conclusion that jurisdiction is reasonable, especially given the court's deference to [plaintiff's] choice of forum and the Commonwealth's interest in adjudicating a dispute between a foreign corporation and a Massachusetts resident.

*Id.* at *3.

The facts here are highly analogous to *McDermet*. First, like the plaintiff in *McDermet*, LiveFree's agent called him over twenty times. Decl. of Traylor ¶¶ 14, 15; Exhibits C, D. As in *McDermet*, the litany of calls identified in the complaint form the basis of Traylor's claims under the TCPA. Second, just as the plaintiff in *McDermet* alleged the defendant's agent placed calls on its behalf, Traylor alleges that LiveFree's agent called his phones. Decl. of Traylor ¶¶ 5, 6, 14, 15;

10

Exhibits C, D. Third, Traylor's selection of this forum is reasonable as he received the improper calls in Massachusetts and the Commonwealth's interest in adjudicating a dispute between a foreign corporation and a Massachusetts resident. This court, like *McDermet*, should also deny LiveFree's motion to dismiss.

The facts of this case are even stronger than those in *McDermet* for three reasons. First, here, not only did LiveFree's agent call Traylor's Massachusetts phone numbers, the phone numbers appearing on Traylor's phone had Massachusetts area codes. Decl. of Traylor ¶¶ 11, 12; Exhibits C, D. Second, in connection with one of LiveFree's agents telemarketing calls to Traylor, LiveFree itself charged Traylor's credit card and received payment from Traylor. Decl. of Traylor ¶¶ 21, 22; Exhibit E. Third, LiveFree itself then shipped to Massachusetts the product which sold to Traylor in connection with the telemarketing call with its Pocatello, Idaho address on the return label. Decl. of Traylor ¶ 23; Exhibits F, G. It defies common sense for LiveFree to argue that it "diametrically offends . . . due process" for this Court to exercise specific personal jurisdiction over LiveFree, having considered these facts. Doc. No. 32, p. 13.

This Court can exercise specific personal jurisdiction over LiveFree based on the acts of its "dealer" agent. Whether an agency relationship exists is "typically a question for the jury." *iNebular, Inc.*, 651 F. Supp.3d at 419. When analyzing jurisdiction, the agent's actions are imputed to the principal are "imputed to [the] principal if the agent acts with actual or apparent authority or if the principal ratifies the agent's conduct." *Id.* at 418-19.  This is true even if "an agent is initially authorized to act on behalf of a principal" if "the principal later ratifies the agent's conduct." *Daynard v. Ness, Motlet, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 55 (1st Cir. 2002).  Here, Traylor has not had the benefit of discovery, therefore little can be known about the contractual relationship between the two Defendants. However, the calls resulted in LiveFree

speaking with Traylor, charging his credit card and shipping a package to Traylor's residency. Accordingly, a *prima facie* showing of personal jurisdiction over LiveFree exists.

### D. LiveFree's own actions give rise to specific personal jurisdiction.

In addition to LiveFree being subject to personal jurisdiction for its agent's conduct, it knowingly and purposefully availed itself to Massachusetts through its own conduct as well. First, in the call dated May 8, 2020, LiveFree's own employee "Tina" spoke with Traylor in the course of an unlawful call made by its agent. Decl. of Traylor, ¶¶ 16-17. Accordingly, LiveFree availed itself to Massachusetts directly (rather than just through its agent) by soliciting its products to a person it knew or should have known was in Massachusetts. LiveFree also took it upon itself to directly ship its medical device from Idaho to Massachusetts in a sale that arose from an unlawful robocall. In the TCPA *Thomas v. Life Protect 24/7 Inc.*, 559 F. Supp. 3d 554, 568 (S.D. Tex. 2021), the plaintiff alleged to have received unlawful robocalls from another medical device company, and in the course of receiving one call, ordered a medical device to be shipped to her residency. *Id.* The Southern District of Texas held the act of sending a package to the plaintiff in the forum state was sufficient purposeful availment to the forum state to establish personal jurisdiction. *Id.,* 559 F. Supp. 3d 554, 568 ("Life Protect's knowledge of Thomas's location prior to selling and mailing her the product indicates that it took "purposeful and affirmative action, the effect of which is to cause business activity (foreseeable by the defendant) in the forum state."

By directly soliciting its product to a Massachusetts resident and shipping its device to that Massachusetts resident in transactions that arose out of calls to a Massachusetts number, LiveFree's own actions subject it to specific personal jurisdiction.

//

### E. In the alternative, Plaintiff should be entitled to complete jurisdictional discovery before LiveFree's motion to dismiss can be adjudicated.

A plaintiff who seeks jurisdictional discovery must make (1) a colorable claim of jurisdiction; and 2) that it has been diligent in preserving its rights to be entitled to jurisdictional discovery. *Quincy Mut. Fire Ins. Co. v. Hoverzon, LLC*, No. 23-10347-PBS, 2024 U.S. Dist. LEXIS 43799, at *21 (D. Mass. Feb. 12, 2024) (Kelley, J.) (internal citations omitted). To be "diligent," the plaintiff must present facts that show why personal jurisdiction would be found if discovery were permitted. *Id.* The "colorable" threshold is low. *Id* (emphasis added). The plaintiff must identify a non-frivolous dispute about facts that may yield a sufficient predicate for personal jurisdiction. *Id.,* at 22. A "colorable claim" requires some showing that discovery is needed or likely to be useful. *Id*. Lastly, and importantly, a district court ultimately has "broad discretion" to determine whether jurisdictional discovery is warranted. *Id*.

Plaintiff has diligently presented a colorable claim tying LiveFree to violations which took place in Massachusetts. Even without having the benefit of discovery, Traylor presents evidence of the following:

- On May 8, 2020, LiveFree's vendor called Traylor on his 617 area code phone number, and transferred the call to a LiveFree employee "Tina" who directed Traylor to LiveFree's website. Decl. of Traylor ¶ 16;

- LiveFree charged Traylor's Massachusetts-based bank account for "Wireless Medical Alert" in a transaction which arose out of a call to his 781 area code phone number; Decl. of Traylor ¶ 21; Ex. E (screenshot of Wireless Medical Alert charge);

- LiveFree shipped a wireless medical device to Traylor in Massachusetts from Idaho in a transaction arising out of a call to Traylor's 781 area code phone number. Decl. of Traylor ¶¶ 23-24; Exs. F and G;

- Each of the calls Traylor received on his 617 phone and his 781 phone appeared to originate from a 617 or 781 phone number respectively; and

13

- Each of the calls Traylor received played a message identical to that which played at the beginning of the calls where he spoke with "Tina" from LiveFree in May of 2020 and from which he ordered the device in March of 2022. Accordingly, a strong inference exists that LiveFree is connected to each of the calls at issue.

Further, jurisdictional discovery can be warranted where a defendant files a motion which relies on evidence outside the four corners of the pleadings, and insists the plaintiff make a showing based on evidence that would be in the exclusive possession of the defendant. *O'Neil v. Somatics, LLC*, U.S. Dist. LEXIS 224402 * 9 2020 WL 043559 (D.N.H. Dec. 1, 2020) (granting plaintiff's request for jurisdictional discovery where "the evidence she seeks is in [defendant]'s exclusive possession"). Here, LiveFree does not dispute that QSynergy availed itself to Massachusetts. Rather, LiveFree contends it does not exercise the requisite direction and control over its "dealer" QSyngery for an agency relationship to exist. *See generally,* Doc. No. 31. First, Traylor contends he has made a *prima facie* showing of an agency relationship, and that LiveFree's own conduct establishes specific personal jurisdiction. However, if the Court agrees with LiveFree that Traylor has not yet presented sufficient evidence of an agency relationship to establish jurisdiction, discovery is in its infancy. Traylor could not reasonably be expected to know the details of the contractual relationship between Q-Synergy and LiveFree at the very outset of discovery. (granting jurisdictional discovery and denying motion to dismiss without prejudice holding "this litigation is in its early stages… the evidentiary record is not yet developed and through the discovery process"). It would be improper to dismiss this case where there are multiple inferences as to LiveFree's connection to the calls, for lack of sufficient evidence, when the fact-finding process has just commenced.

Accordingly, if the Court finds *a prima facie* showing of personal jurisdiction over LiveFree has yet to be made, Traylor requests the Court hold the motion in abeyance and allow the

Parties time to complete jurisdictional discovery and to submit supplemental briefing after 45-60 days.[4]

## IV.     CONCLUSION

For the foregoing reasons, Defendant LiveFree Emergency Response Services, Inc.'s motion to dismiss should be denied. In the alternative, the Court should hold the motion in abeyance to allow the parties time to complete jurisdictional discovery.

Respectfully submitted,

KIMMEL & SILVERMAN, P.C.

*/s/ Jacob U. Ginsburg*
Jacob U. Ginsburg, Esq. (*pro hac vice*)
30 East Butler Avenue
Ambler, PA 19002
Telephone: (267) 468-5374
Fax: (877) 788-2864
jginsburg@creditlaw.com
teamkimmel@creditlaw.com

BUTSCH ROBERTS & ASSOCIATES LLC

Christopher E. Roberts (*pro hac vice*)
7777 Bonhomme Avenue, Suite 1300
Clayton, MO 63105
Telephone: (314) 863-5700
croberts@butschroberts.com
*Attorneys for Plaintiff*

---

[4] The time to complete jurisdictional discovery and submit supplemental briefing would depend on when the Order were issued.

## CERTIFICATE OF SERVICE

I, Jacob U. Ginsburg hereby certify the foregoing was served on all parties of record via ECF on this June 13, 2024.

*/s/ Jacob U. Ginsburg*