UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GARRETT TRAYLOR, * <br> * <br> Plaintiff, * <br> * <br> v. * <br> * <br> LIVEFREE EMERGENCY RESPONSE * <br> INC. and Q SYNERGY, LLC, * <br> * <br> Defendants. * | Civil Action No. 1:24-cv-10329-IT |

MEMORANDUM & ORDER

December 3, 2024

TALWANI, D.J.

Plaintiff Garrett Traylor brings this putative class-action lawsuit against Defendants LiveFree Emergency Response Inc. ("LiveFree") and Q Synergy, LLC ("Q Synergy").[1] Traylor alleges that he was the recipient of unlawful robocalls by Q Synergy on behalf of LiveFree. He alleges violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b) *et seq.*, by both companies.[2] Pending before the court is LiveFree's Rule 12(b)(2) Motion to

---

[1] This second Defendant is identified by Plaintiff as "Q Synergy, LLC" in the First Amended Class Action Complaint [Doc. No. 26], by LiveFree as "QSynergy, LLC" in the Motion to Dismiss [Doc. No. 31], and by its authorized representative as "Q Synergy LLC" in the LiveFree Dealer Application and Agreement [Doc. No. 57-1]. The court uses the short-form "Q Synergy" without resolving the entity's exact name. According to the docket, Q Synergy was served on July 29, 2024, but has not yet appeared.

[2] The TCPA contemplates agency relationships among regulated entities in its private right of action provision, 47 U.S.C. § 227(c)(5). That section provides: "A person who has received more than one telephone call within any 12-month period *by or on behalf of the same entity* in violation of the regulations prescribed under this subsection may" bring a TCPA action. Further, the Federal Communications Commission ("FCC") has ruled that section 227(b) of the TCPA incorporates federal common law of agency and vicarious liability under the TCPA may extend further than federal common law, In Re Dish Network, LLC, 28 F.C.C.R. 6574, 6587, 6590 (2013), and courts have agreed, see Kristensen v. Credit Payment Services Inc., 879 F.3d 1010, 1014 (9th Cir. 2018) (applying the Restatement (Third) of Agency to analyze vicarious liability

Dismiss Amended Complaint ("Motion to Dismiss") [Doc. No. 31]. For the following reasons, the Motion to Dismiss [Doc. No. 31] is DENIED.

## I.    Standard of Review

When a defendant challenges personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists. See Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015). Where the court considers a Rule 12(b)(2) motion without holding an evidentiary hearing, it applies the "prima facie standard." See Sawtelle v. Farrell, 70 F.3d 1381, 1386 n.1 (1st Cir. 1995).[3] To make a prima facie showing of jurisdiction, a plaintiff cannot rest on the pleadings but must "proffer[] evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675 (1st Cir. 1992). However, "the district court is not acting as a factfinder; rather, it accepts properly supported proffers of evidence by a plaintiff as true and makes its ruling as a matter of law." United Elec. Radio and Mach. Workers of America (UE) v. 163 Pleasant St. Corp., 987 F.2d 39, 44 (1st Cir. 1993).

## II.    Factual Record for Purposes of the Motion to Dismiss

Traylor is a resident of Massachusetts. Decl. of Garrett Traylor ("Traylor Decl.") ¶ 2 [Doc No. 38]. In 2003, Traylor placed his landline telephone number beginning in 781 on the national Do Not Call Registry ("DNC List"). Id. ¶ 5. In 2018, Traylor placed his cellular telephone number beginning in 617 on the DNC List. Id. ¶ 6.

---

under the TCPA); Cacho v. McCarthy & Kelly LLP, 2024 WL 3293628, at *13 (S.D.N.Y. July 3, 2024) (affirming that the TCPA incorporated tort-related vicarious liability); Doane v. Benefytt Technologies, Inc., 2023 WL 2465628, at *8 (D. Mass. Mar. 10, 2023) (affirming the FCC ruling that a "broad range of agency principles" could hold a principal liable).

[3] Neither side has requested an evidentiary hearing or disputed application of the prima facie method.

LiveFree is a Delaware corporation with its principal place of business at 3411 Hawthorne Road, Pocatello, Idaho 83201. Decl. of Joshua K. Chandler ISO LiveFree Emergency Response, Inc.'s Mot. to Dismiss ("Chandler Decl.") ¶ 5 [Doc. No. 30]. LiveFree manufactures mobile medical alert systems, including a product called "LifeBeacon." Id. ¶ 6; see also Traylor Decl. ¶ 17 (informed from LifeBeacon.com website that LifeBeacon is the medical alert product manufactured by LiveFree, which operates from 3411 Hawthorne Road, Pocatello, Idaho 83201).

Traylor alleges that Q Synergy is a Florida limited liability company with its principal place of business in Florida. First Am. Class Action Compl. ("Am. Compl.") ¶ 27 [Doc. No. 26]. LiveFree has a written contract with Q Synergy. See Defendant's Initial Disclosures 2 [Doc. No. 24]. LiveFree refers to Q Synergy and others with whom it has this arrangement as "Dealers." Chandler Decl. ¶ 8 [Doc. No. 30].

Under their arrangement, LiveFree gives Dealers a license to market and sell its devices using LiveFree's trademark but prohibits Dealers from holding themselves out as LiveFree or LifeBeacon. Id. ¶ 11. Upon making a sale, Dealers pay LiveFree on a per unit basis for the product, order fulfillment, product support, payment processing, and device monitoring, and LiveFree ships the product and provides the product support and device monitoring to the customer who made the purchase. Id. (and as clarified at oral argument). When customers use LiveFree's payment processing, LiveFree remits the (excess) funds derived from the sale of devices and services to Dealers with LiveFree retaining a processing fee. Id. ¶ 10.

In February 2020, Traylor received the first of many robocalls from what appeared to be a Massachusetts area code offering LiveFree's product and services. Traylor Decl. ¶ 10 [Doc No. 38]. The first call was to his cell phone, and when Traylor answered a pre-recorded message

3

played stating that the caller was "Amy with medical services" and that Traylor could receive a medical alert system at no cost. Id. ¶ 13.

In May 2020, on another call from what appeared to be a Massachusetts area code, Traylor stayed on the line to speak with a live agent and was eventually connected with a live person who identified herself as Tina. Id. ¶ 16.[4] The person stated that she worked for "LifeBeacon", and that Traylor could learn about the company on LifeBeacon.com, or by searching for "LifeBeacon" on YouTube. Id. LiveFree has an employee named Tina Taresh who works with Dealers. Chandler Decl. ¶ 27 [Doc. No. 30].[5] On or around May 27, 2020, Traylor wrote to LiveFree and advised it that the robocalls being placed were unwanted. Traylor Decl. ¶ 18 [Doc No. 38]. In June 2020, Traylor received another robocall on his cell phone from a purported Massachusetts area code. Traylor Decl. ¶ 14 [Doc No. 38]; see Plaintiff's Exhibit C [Doc. No. 38-3]. In November 2021, Traylor also began receiving similar calls on his landline. Traylor Decl. ¶ 15 [Doc No. 38]. Traylor received seventeen such calls between December 2021 and May 2023. Traylor Decl. ¶ 15 [Doc No. 38]; Plaintiff's Exhibit D [Doc. No. 38-4].

On March 31, 2022, Traylor purchased the product being sold. Traylor Decl. ¶ 20 [Doc No. 38]. The charge on his credit card appeared as "Wireless Medical Alert[,] Pocatello, Idaho." Id. ¶ 21; Plaintiff's Exhibit E at 2 [Doc. No. 38-6]. When the package arrived at his home in Massachusetts, its shipping label listed the return address as "Q Synergy, 3411 Hawthorne Road,

---

[4] The allegations in the Amended Complaint are slightly different. Traylor alleges that after staying on the line, the live representative gave him a customer support number to call and that he reached Tina after calling that number. Am. Compl. ¶¶ 64-66 [Doc. No. 26].

[5] Defendant states that "Ms. Taresh did not call Plaintiff[,]" see Chandler Decl. ¶ 28 [Doc. No. 30] (emphasis added), but does not assert that she did not speak with Traylor.

4

Pocatello, Idaho 83201." Traylor Decl. ¶ 23 [Doc No. 38]; Plaintiff's Exhibit F at 2 [Doc. No. 38-7].

### III. Discussion

    A.    *Requirements for Personal Jurisdiction*

This court has federal question jurisdiction over the parties' dispute under 28 U.S.C. § 1331. In federal question cases, a court "can 'exercise personal jurisdiction over a defendant … if that defendant has sufficient contacts with the United States as a whole.'" Alianza Americas v. DeSantis, 727 F.Supp.3d 9, 33 n.11 (D. Mass. 2024) (quoting Lorelei Corp. v. Cnty. of Guadalupe, 940 F.2d 717, 719-20 (1st Cir. 1991)). But "where a federal statute does not provide for nationwide service, Federal Rule of Civil Procedure 4(e) 'allows extraterritorial service of process only to the extent permitted by the law of the state in which the district court sits.'" Id. "'Rule 4(e) . . . prescribes a two-step analysis' that is the same as the analysis in diversity cases: '[f]irst, the federal court must determine whether the state's "long arm" or "doing business" statute authorizes it to exercise personal jurisdiction over the foreign defendant,' and '[i]f it does, the court must then determine whether the exercise of personal jurisdiction under the circumstances is consistent with due process under the [F]ourteenth [A]mendment.'" Id.; see also Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 712 (1st Cir. 1996) (in diversity cases, the exercise of personal jurisdiction over a defendant must be authorized by statute and consistent with the due process requirements of the United States Constitution); Cossart, 804 F.3d at 18 (the requirements of both long-arm statute and due process clause must be satisfied to establish jurisdiction over a defendant).[6]

---

[6] "The jurisdictional requirements imposed by the Massachusetts long-arm statute are quite similar to, though not completely congruent with, the jurisdictional requirements imposed by the Due Process Clause." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28,

The constitutional due process inquiry requires that there be "minimum contacts" between the defendant and the forum state. Sawtelle, 70 F.3d at 1388 (quoting Int'l Shoe Co. v. State of Wash., 326 U.S. 310, 316 (1945)). Thus, a court may exercise general jurisdiction over "a defendant who has maintained a continuous and systematic linkage with the forum state," and may exercise specific jurisdiction over a cause of action that "relates sufficiently to, or arises from" the defendant's forum-state contacts. Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 288 (1st Cir. 1999).

The requirements under both the constitutional and statutory analyses can be met by imputing the contacts of an agent to its principal to assert personal jurisdiction over the principal. See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 53 (1st Cir. 2002). "While a formal agency agreement can be dispositive, no formal agreement between defendants need be established in order to find an agency relationship… Instead, the question is whether the relationship between the defendants is sufficient to attribute the conduct of one defendant to another… If such a relationship is established, then the contacts of the agent may be imputed to the principal for purposes of personal jurisdiction." Bud's Goods & Provisions Corp. v. Doe, 2023 WL 2696587, at *3 (D. Mass. 2023) (citing Daynard, 290 F.3d at 53-55); see also iNebular, Inc. v. Deutsche Bank Tr. Co. Americas, 651 F. Supp. 3d 413, 420 (D. Mass. 2023).

B.   *Agency Relationship Between LiveFree and Q Synergy*

Traylor alleges that Q Synergy acted as LiveFree's agent and that both Q Synergy's actions on behalf of LiveFree and LiveFree's own actions are sufficient to justify personal

---

34 (1st Cir. 2016) (citation omitted). The parties agreed at oral argument, however, that the court should treat the long-arm and constitutional due process analyses as coextensive for purposes of this motion. Accordingly, the court considers only the constitutional requirements.

jurisdiction over LiveFree. Pl.'s Reply Br. in Further Opp. to Def. LiveFree Emergency Response, Inc.'s Mot. to Dismiss 2 [Doc. No. 46]. LiveFree counters that Q Synergy is a third party acting unilaterally and its actions cannot form the basis of personal jurisdiction over LiveFree. Def.'s Mem. 10 [Doc. No. 32]. LiveFree also points out that it precludes its Dealers from acting as its agents.[7] Id. at 11; Decl. of Joshua K. Chandler ISO LiveFree Emergency Response, Inc.'s Mot. to Dismiss ("Chandler Decl.") ¶ 11 [Doc. No. 30].

To determine whether Q Synergy's actions can be imputed to LiveFree for the purposes of personal jurisdiction, the court considers whether Traylor has proffered facts sufficient to support his claim that Q Synergy was acting as LiveFree's agent.

The evidence that militates in favor of an agency relationship is: (1) the product marketed to Traylor by Q Synergy was produced and shipped by LiveFree; (2) on one call from Q Synergy, Traylor was provided a number which connected him to a LiveFree dealer support agent; (3) when Traylor purchased the LifeBeacon monitor, LiveFree both charged him for and mailed him the device; (4) the package with the device sent to Traylor had Q Synergy's name, but LiveFree's address, as the return address; and (5) Q Synergy's "purchase" of products did not occur until the sale was made to customers. The court finds these facts sufficient to support an agency relationship for purposes of the jurisdictional inquiry.

LiveFree contends that because it does not outsource its marketing efforts to Dealers and expressly prohibits its Dealers from representing that they are calling on behalf of LiveFree or LifeBeacon, Q Synergy cannot be its agent. See Chandler Decl. ¶¶ 4, 7-10, 12-13, 30-35 [Doc.

---

[7] LiveFree's Dealer Agreement provides: "Dealer is an independent contractor and shall not represent itself as an employee or agent of LiveFree except as specifically permitted in writing by LiveFree." LiveFree Dealer Agreement ¶ 9.6 [Doc. No. 57-1].

7

No. 30]. But the facts pled here—which LiveFree does not directly contest—are that Traylor was provided a number for a LiveFree dealer support agent via a call from Q Synergy and that a product purchased on a call from Q Synergy was charged by LiveFree, sent by LiveFree, and meant to be returned to LiveFree, if necessary. LiveFree cannot sidestep the question of whether Q Synergy was its agent by merely insisting that Q Synergy was prohibited from revealing the nature of its relationship with LiveFree.

Additionally, finding an agency relationship between Q Synergy and LiveFree at this stage of litigation comports with the language and purpose of the TCPA. The FCC has ruled that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call," In Re Dish Network, LLC, 28 F.C.C.R. 6574, 6589 (2013) (quotation omitted), and that this reading of the TCPA is necessary to ensure it functions as an "effective remedy," id. at 6591. The FCC was clear that "allowing [a] seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions." Id. at 6588. Following the FCC's ruling, courts have found vicarious liability for parties engaging third-party telemarketers under federal common law agency principles. See, e.g., Rosenberg v. LoanDepot.com LLC, 435 F.Supp.3d 308, 325 (D. Mass. 2020); see also Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 168 (2016) (stating court had "no cause to question" FCC's decision).

Accordingly, the court finds that Traylor has made a prima facie showing for purposes of the jurisdictional inquiry that Q Synergy was acting as an agent of LiveFree. The personal

jurisdiction analysis will thus consider Q Synergy's actions as imputed to LiveFree as well as LiveFree's own actions.

  C. *Constitutional Due Process*

LiveFree asserts that this court cannot properly exercise either specific or general personal jurisdiction over it. Def.'s Mem. 6-7 [Doc. No. 32].

  1. General Jurisdiction

LiveFree contends that, as a Delaware corporation principally based in Idaho, it cannot be "at home" in Massachusetts, and that its affiliations with Massachusetts are not so "continuous and systematic" that it is rendered at home in the state. Def.'s Mem. 7-8 [Doc. No. 32]. The court agrees that for these reasons it does not have general personal jurisdiction over LiveFree.

  2. Specific Jurisdiction

"The three elements of specific jurisdiction are relatedness (the nexus of plaintiff's claim with the defendant's contact with the forum), purposeful availment (something more than an isolated contact or the unilateral activity of a third person), and the reasonableness of the exercise of jurisdiction (the five Gestalt factors)." Warren Env't, Inc. v. Source One Env't, Ltd., 2020 WL 1974256, at *3 (D. Mass. Apr. 24, 2020) (citing Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 35 (1st Cir. 2016)).

"As the First Circuit has stated, the relatedness requirement—'that a suit arise out of, or be related to' [d]efendant's forum activities—'ensures that the element of causation remains in the forefront.'" Back Bay Farm, LLC. v. Collucio, 230 F. Supp. 2d 176, 186 (D. Mass. 2002) (quoting Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 206-07 (1st Cir. 1994)). "Relatively speaking, the relatedness inquiry is to be resolved under 'a flexible, relaxed standard.'" Baskin-Robbins, 825 F.3d at 35 (quoting Pritzker v. Yari, 42 F.3d 53, 61 (1st Cir. 1994)). "The

purposeful availment test focuses on the defendant's intentionality and is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 32 (1st Cir. 2010) (internal quotation and citation omitted). Under the third and final requirement, the exercise of jurisdiction must be "reasonable under the circumstances." Id. at 33 (citation omitted).

      a.      Relatedness

Traylor has proffered facts showing that (1) the calls from Q Synergy spoofed Massachusetts phone numbers, (2) the calls targeted him on his Massachusetts phone numbers, and (3) LiveFree shipped the device to him in Massachusetts. LiveFree offers no argument as to relatedness. On prima facie review, Traylor's facts are sufficient to establish that the causes of action relate to LiveFree's contacts with the forum through both Q Synergy's imputed actions and LiveFree's own actions. The court finds that relatedness is satisfied.

      b.      Purposeful Availment

The parties' primary disagreement lies in the purposeful availment prong. LiveFree argues that it did not purposefully avail itself of the forum because it did not make the alleged calls, did not conduct business in Massachusetts, and that any other allegations are either "fortuitous" or the unilateral actions of a third party. Def.'s Mem. 9-12 [Doc. No. 32]. In response, Traylor argues that LiveFree solicited sales of its product to Massachusetts residents through Q Synergy spoofing Massachusetts phone numbers, and that LiveFree directly charged a Massachusetts resident's bank account and shipped its product to Massachusetts. Pl.'s Opp. 6 [Doc. No. 37].

LiveFree is correct that, generally, specific jurisdiction over a nonresident defendant stems from that defendant's own conduct, not a third party's or plaintiff's "unilateral activity." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). However, because the court has found that Traylor has made a sufficient showing that Q Synergy was acting as LiveFree's agent, its conduct and its contacts with the forum can be properly attributed to LiveFree. See Daynard, 290 F.3d at 62. As for Traylor's actions, the purchase of the LifeBeacon device was Traylor's choice, but it arose as a result of the directed telemarketing of LiveFree's product to Massachusetts residents.

Courts that have considered the question of what is sufficient for specific jurisdiction under the TCPA have found that repeated contacts targeted at Massachusetts residents, including calls alleged to be violations of the TCPA, can be considered purposeful availment by a defendant. See, e.g., McDermet v. Porch.com, Inc., 2019 WL 1619867, at *2 (D. Mass. Apr. 16, 2019) ("[T]he Complaint alleges that Porch or its agents called McDermet's mobile and home phone numbers that have a Massachusetts area code (978), an allegation sufficient to establish that they purposefully availed themselves of the privilege of doing business in the Commonwealth."); see also Daynard, 290 F.3d at 62 ("…where the defendant initiated the transaction by mailing or calling the plaintiff in the forum … many courts have found jurisdiction.").

Accordingly, the court finds that LiveFree purposefully availed itself of Massachusetts.

c.      Reasonableness

"[T]he Due Process Clause bars a court from asserting jurisdiction over the person of a defendant if doing so would be fundamentally unfair" and "gauging fairness requires an assessment of reasonableness for, in certain circumstances, unreasonableness can trump a

minimally sufficient showing of relatedness and purposefulness." Ticketmaster, 26 F.3d at 210. In assessing reasonableness, courts consider five factors (the "Gestalt factors"): (1) the defendant's burden of appearance; (2) the forum state's adjudicatory interest; (3) the plaintiff's interest in obtaining convenient relief; (4) the administration of justice; and (5) pertinent policy arguments. See Sawtelle, 70 F.3d at 1394.

LiveFree argues that the exercise of specific personal jurisdiction over it by this court would be unreasonable or unfair because (1) it is not "at home" in Massachusetts, (2) it lacks a business connection to Massachusetts, (3) it did not authorize Q Synergy to make the alleged calls, and (4) exercise of jurisdiction would violate fair play and would be unjust. Def.'s Mem. 13-14 [Doc. No. 32]. These arguments are largely restatements of arguments made earlier in its brief, and LiveFree does not contend that the exercise of specific personal jurisdiction would be a burden on it. Additionally, LiveFree does not address the Gestalt factors which lean in favor of exercising jurisdiction, such as Massachusetts's adjudicatory interest in protecting its residents from violations of the TCPA and the plaintiff's interest in obtaining convenient relief. The court finds that it would not be unreasonable or unfair to exercise jurisdiction over LiveFree.

## IV. Conclusion

For the foregoing reasons, the Motion to Dismiss [Doc. No. 31] is DENIED.

IT IS SO ORDERED.

December 3, 2024                    /s/Indira Talwani
                                    United States District Judge